In the Matter of ANONYMOUS, an Attorney, Respondent. ASSOCIATION OF THE BAR OF THE CITY OF NEW YORK, Petitioner.

First Department, April 7, 1964.

*John G. Bonomi* for petitioner.

*Henry A. Drescher* for respondent.

*Per Curiam.* Petitioner, the Association of the Bar of the City of New York, moves for an order suspending respondent attorney from the practice of law or, in the alternative, imposing appropriate discipline, since respondent is either mentally disabled and unable to defend himself against pending charges of professional misconduct or is unwilling to do so. A consent to indefinite suspension, executed by respondent, has been submitted on his behalf.

The question is whether respondent should be indefinitely suspended from the practice of law pursuant to consent because of the claimed mental disability while the charges of professional misconduct are pending against him. It is concluded that if respondent is mentally disabled, as indicated in the moving papers, he is incapacitated from practicing law competently or rebutting the charges of professional misconduct pending against him. On the other hand, if he is not mentally disabled, his filed consent to indefinite suspension is sufficient to authorize action by the court. Therefore, he should be indefinitely suspended on appropriate terms.

Respondent was admitted as an attorney and counsellor at law in this State at a term of this court on June 29, 1948. He is now charged by petitioner with five counts of professional misconduct. These include failure to file retainer statements as required by Special Rules of the Appellate Division, First Department, Regulating the Conduct of Attorneys, conversion of settlement funds belonging to his clients, and issuance of worthless checks. Respondent asserts the failure to abide by the rules was inadvertent, that the funds kept by him from his clients were either loans or were kept with the client's consent for investment, and none of the checks was given on the understanding that they would be immediately deposited. Overall, he asserts lack of wrongful intent and economic misfortune. He also asserts that he was ill during portions of the period when the petitioner was attempting to arrange with him for hearings, which were finally arranged and held on June 8 and 15, 1961. At the hearings respondent stated he would pay back one of his clients, but he explains he was later unable to do so because of his '' physical condition ''.

On application of petitioner this court on February 6, 1962 appointed a Referee to take testimony and report with opinion concerning the charges. No hearings have been held before the Referee. The first one was adjourned to enable respondent to retain counsel, the second because he collapsed in court and was hospitalized, and the third was adjourned upon his application supported by a medical certificate. Yet a fourth hearing

was adjourned because respondent was involved in an automobile accident and again hospitalized. His physician submitted a report stating that he was "suffering from a post-concussion syndrome with personality changes" and would "be unable to work, or try cases for the next few months". Finally, on January 17, 1963 a second medical report restated the substance of the first and added that respondent was undergoing "convulsive seizures".

At this point in the proceedings, respondent consented to an application by petitioner to this court for permission to have him examined by a physician designated by the Medical Report Office, Supreme Court, New York County. After hospital records were obtained, respondent was examined on April 23, 1963. The report indicated the likelihood of an emotional disturbance and recommended that respondent undergo psychiatric evaluation. Respondent agreed to such an examination, and the psychiatric report was received by petitioner on September 4, 1963. It states in part: "A great deal more material came out through the examination of the psychological tests, where we found some definite evidence of mental deterioration. It would have been impossible for a man with this type of mental function to have completed law school or even pre-law preparation. The deterioration does not appear to be of an organic nature of the sort that might be related to brain damage from the accident." The report concludes: "In summary: This is an extremely difficult case to evaluate. One cannot finally rule out malingering, but from the mass of evidence I believe this to be a frank early schizophrenic psychosis which will probably progress. I do not believe that in his present state  *  *  * [respondent] is able to defend himself."

Following these events, as already noted, petitioner Bar Association moved for an order suspending respondent or, in the alternative, for an order finding respondent guilty of professional misconduct and imposing such discipline as justice may require on the basis of testimony and exhibits adduced at the hearings before its Committee on Grievances held on June 8 and 15, 1961. An attorney acquainted with respondent has volunteered to represent respondent without fee. He has submitted answering papers on respondent's behalf with respondent's purported and apparent authorization.

Respondent's attorney expresses grave doubts as to the legal effect of consensual action by respondent, in view of respondent's apparent mental disability. With this reservation he has submitted the acknowledged statement of respondent consenting to "indefinite suspension as an attorney, under such terms and

conditions as shall be fixed by the Appellate Division of the Supreme Court of the State of New York, First Judicial Department.'' At the request of this court, it was executed in the presence of himself, the notary public, and counsel for petitioner. Respondent's attorney suggests that the indefinite suspension be conditioned on reinstatement on satisfactory proof to this court that respondent's mental impairment has terminated, '' without requiring thereafter a hearing with respect to the charges set forth in the petition herein.''

In reply, petitioner asserts that the question of a subsequent disciplinary hearing should not be considered now. The question may never arise, and if it does it should be resolved under the then prevailing circumstances.

It is apparent that respondent should be suspended either because of his mental disability or, assuming no such disability, because he consents while confronted with disciplinary charges. This court has abundant authority to do so pursuant to its power to regulate who shall practice law and under what conditions. It is fundamental that a primary concern of Bench and Bar is to protect the public and maintain the integrity and responsibility of the legal profession. The power of the court is expressed in subdivision 2 of section 90 of the Judiciary Law in part as follows: '' The supreme court shall have power and control over attorneys and counsellors-at-law and all persons practicing or assuming to practice law, and the appellate division * * * is authorized to * * * suspend from practice or remove from office any attorney * * * who is guilty of professional misconduct, malpractice, fraud, deceit, crime or misdemeanor, or any conduct prejudical to the administration of justice ''. The statute is '' declaratory of a jurisdiction that would have been implied '' (*People ex rel. Karlin* v. *Culkin,* 248 N. Y. 465, 477; *Gair* v. *Peck,* 6 N Y 2d 97, 110, app. dsmd. and cert. den. 361 U. S. 374; see *Matter of Cohen,* 7 N Y 2d 488, 495–496, affd. 366 U. S. 117; *Leviten* v. *Sandbank,* 291 N. Y. 352, 357–358). The sense of the opinion by Chief Judge CARDOZO in the *Karlin* case is that the court has very broad inherent powers of supervision and that the statute is not restrictive but expressive of that power. The language in the statute referring to conduct prejudicial to the administration of justice would seem, in any event, sufficiently broad to embrace the circumstances in this proceeding.

Criminal or immoral conduct by the attorney with classic *mens rea* is not required to invoke this supervisory and protective power. In order to obtain the license to practice law, one must pass rigid academic, character and other fitness stand-

ards. By the same token, the disqualifying factor is unfitness, not just culpability. Indeed, culpability is relevant only because it may bear on fitness. The function of the court is not penal but protective. Thus professional irresponsibility and incompetence may require suspension of the attorney's privilege to practice law (see, e.g., *Matter of Goldberg,* 18 A D 2d 188; *Matter of Rivette,* 283 App. Div. 439, mot. for lv. to app. den. 306 N. Y. 986; *Matter of Halpern,* 265 App. Div. 340; *Matter of Friedland,* 238 App. Div. 215).

Mental disability is no exception. This court has already held that irresponsibility coupled with or caused by mental illness merits disbarment or suspension (see, e.g., *Matter of Freedman,* 7 A D 2d 447; *Matter of Portnick,* 5 A D 2d 16; *Matter of Gould,* 4 A D 2d 174, mot. for lv. to app. den. 3 N Y 2d 708; *Matter of Nicolini,* 262 App. Div. 114).*

In *Matter of Portnick* (*supra*) the attorney had issued bad checks. The opinion recognizes the conduct may have been caused by mental disturbance, but nevertheless ordered disbarment (5 A D 2d 16, 17) : " In the interest of public protection the conduct described requires that respondent be dropped from the roll of attorneys and counselors of law. In doing so however, it is recognized that the conduct may have been caused by an irresponsibility occasioned by mental disturbance. Nevertheless, the public is entitled to have as members of the Bar persons who are qualified and fit, and it looks to this court for its protection. As was said in *Matter of Gould* (4 A D 2d 174, 175, leave to appeal to Court of Appeals denied) : ' A disciplinary proceeding is not concerned with meting out punishment but with the question of fitness to continue on the roll of qualified attorneys. The primary consideration is the protection of the public in its reliance upon the integrity and responsibility of the legal profession. Practitioners, whether incapable or unwilling to distinguish between right and wrong, cannot be allowed to remain as members of the Bar (*Matter of Bivona,* 261 App. Div. 221; *Matter of Dubinsky,* 256 App. Div. 102).' " If respondent is mentally disabled, as indicated by the moving papers, he is incapable of defending the charges or practicing law, and should be suspended.

On the other hand, if he is mentally competent, the court could accept his resignation pending disciplinary charges (see, e.g., *Matter of Wells,* 15 A D 2d 430; *Matter of Quartin,* 266

---

* For relevant discussion and comment in the area of mental disability on the part of lawyers, see Stevens, The Lawyer's Mental Health and Discipline, 48 A. B. A. J. 140 (1962). See, also, Note, Disbarment: Mental Condition as a Defense, 47 Minn. L. Rev. 314 (1962).

App. Div. 733; cf. *Matter of McGrath,* 255 App. Div. 923; Anno.—Attorney: Resignation from Bar, 54 ALR 2d 1280). It follows that his request for voluntary suspension could be accepted.

Since respondent has consented to his suspension, it is not necessary to consider the holding of any hearing on the present application.

Accordingly, the charges pending against respondent should be held in abeyance pending further action by this court and respondent should be indefinitely suspended from the practice of law until further order of this court. Respondent should be granted leave to make appropriate application, when and if he is able and so advised, for disposition of the charges against him, and for eventual reinstatement to membership at the Bar, if such restoration be then deemed merited. Such application should be made, not only upon the proof then available, but also upon all the proceedings heretofore had herein, including the transcript and exhibits in the proceedings before the Committee on Grievances of the petitioner, which transcript has been made a part of the records in this court. It may then be determined whether to prosecute further the charges against him and whether the suspension should continue pending their disposition.

BREITEL, J. P., VALENTE, McNALLY, STEVENS and EAGER, JJ., concur.

Respondent suspended indefinitely.